# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00648-COA

**BOOKER T. LAIRD**                                                                    **APPELLANT**

**v.**

**EAN HOLDINGS, LLC**                                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/2024 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | DELANO FUNCHES |
| ATTORNEYS FOR APPELLEE: | SCOTT TIMOTHY ELLZEY LAUREN REEDER McCRORY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION | AFFIRMED - 10/28/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal results from a grant of summary judgment in favor of EAN Holdings, LLC, the owner of the rental car involved in a rear-end collision that injured Booker T. Laird. After conducting a de novo review of the record, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 15, 2021, Booker T. Laird was rear-ended by Adrienne Stuckey while traveling on I-55 South near Terry. At the time of the accident, Laird was a 91-year-old resident of Hinds County. Stuckey worked for Seneca Promotions and was driving a silver 2020 Jeep Compass, a vehicle that her employer supplied for her to use. EAN Holdings, LLC

owned the Jeep. Stuckey had been employed with Seneca for over five years prior to the accident and was returning the Jeep from New Orleans for work. Although she did not perform maintenance on the rental car herself, she routinely checked the lights, tires, and oil. If the vehicle required an oil change, Seneca would contact her to return the rental car to Enterprise (a leasing company) for routine maintenance.

¶3.     As a sales representative and territory manager, Stuckey typically drove about 500 miles daily from Jackson to New Orleans and the surrounding areas of West Louisiana to complete her deliveries. At the time of the accident, she had been making this drive for over three years. Stuckey testified under oath that she was traveling at around 65 miles per hour, within the speed limit, on a sunny day but had slowed down considerably when the accident occurred. She attempted to stop the rental car by hitting her brakes to avoid colliding with Laird. However, when she applied the brakes, it caused the rental car to slide or skid, resulting in the brakes locking.

¶4.     Following the accident, Stuckey exited the rental car and waited with Laird for the police to arrive. Laird commented that his leg hurt. Stuckey immediately called Seneca. Once the police arrived, Stuckey explained that she attempted to stop the car by hitting the brakes but could not avoid hitting Laird. Enterprise contacted Stuckey for information about the accident. Stuckey testified that she did not remember everything she told them but knew they discussed the accident.  In her affidavit, taken October 3, 2023, Stuckey stated:

> Immediately prior to impact, I applied my brakes, but I was unable to stop the vehicle in time to avoid impacting the back of the vehicle in front of me . . . [a]s an operator of the vehicle, I did not perceive any malfunction with the brakes at any time prior to the accident . . . [t]o my knowledge, there were no

mechanical defects or problems with the vehicle I was operating prior to the accident or at the time of the accident.

¶5.    On October 4, 2021, Laird brought a negligence complaint against Enterprise and Stuckey, seeking one million dollars in damages he incurred from the accident. On April 11, 2022, Laird entered an amended complaint to include Seneca Promotions. On November 15, 2022, Enterprise was dismissed from the suit without prejudice as a non-party. Laird eventually settled with Seneca and Stuckey, leading to both defendants being dismissed from the lawsuit. Before this dismissal, Stuckey was deposed on January 23, 2023. The deposition testimony follows:

> Q.    Tell me this: When you ran into the back of Mr. Laird, did you try to hit your brakes?
>
> A.    Yes.
>
> Q.    Okay.
>
> A.    I think that's what caused my slide. I think I locked them up. So yes, I hit the brakes. That's the answer, yeah.
>
> . . . .
>
> Q.    Okay. And you're saying when you hit the brakes the vehicle slid?
>
> A.    Yes, because I slammed the brakes.
>
> Q.    Okay.
>
> A.    Well, I wouldn't say—when I noticed that I was getting closer on him, yeah, so I hit the brakes and, you know, it wasn't no stop. It was more like a slide, yeah.
>
> . . . .
>
> Q.    But now I want to be clear on this. Do you remember that vehicle

sliding before it hit Mr. Laird?

A.  I remember me trying to stop.

Q.  But you testified earlier—

A.  Yes.

Q.  —that the vehicle skidded—

A.  Yes. When I hit the brakes.

. . . .

A.  You know how when you push the brakes—

Q.  Right

A.  — and it don't stop. It wasn't an immediate stop, so that's a—

Q.  So when you applied the brakes the vehicle kept going?

A.  Yeah, yeah. Yeah, yeah.

Q.  Okay. You wanted it to stop?

A.  Yes.

Q.  But it didn't?

A.  No, not quick.

Q.  Not immediate?

A.  Yeah, not immediately.

Q.  And you feel that if the vehicle had stopped you would not have hit Mr. Laird?

A.  Yes, if I could have stopped. Yes.

¶6.  On April 28, 2023, Laird filed a second amended complaint adding EAN Holdings

4

as a defendant, asserting that as the owner of the vehicle involved in the accident, it breached its duty "by placing a vehicle on the highway that did not have operable brakes" and "by failing to provide a roadworthy vehicle with operable brakes." No testing was conducted on the vehicle, and the brakes did not indicate any issues.

¶7. On May 9, 2024, the circuit court granted EAN Holdings' motion for summary judgment. The court did not find that the affidavit and deposition from Stuckey were inconsistent. The judge stated there was "no evidence that there was some malfunction in the brakes or problem with the vehicle that caused the accident." Laird now appeals.

## STANDARD OF REVIEW

¶8. We review a trial court's disposition of a motion for summary judgment de novo. *Treasure Bay Corp. v. Ricard*, 967 So. 2d 1235, 1238 (¶10) (Miss. 2007). This Court "examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, [and] affidavits[,]" as allowed "under Rule 56(c) of the Mississippi Rules of Civil Procedure." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001). The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact. *Id.* "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005); *accord* M.R.C.P. 56(c).

## DISCUSSION

¶9. Laird contends that the circuit court erred in granting summary judgment in favor of EAN Holdings despite the existence of material factual disputes.

¶10. Laird argues that Stuckey's testimony produced sufficient evidence of EAN Holdings' negligence to defeat summary judgment because Stuckey's affidavit testimony contradicted her deposition testimony. EAN Holdings contends that there is no genuine issue of material fact because Laird did not satisfy his burden of establishing that the brakes in EAN Holdings' vehicle were inoperable or malfunctioning at the time of the accident or that EAN Holdings failed to properly install, inspect, or service the brake system in the vehicle.

¶11. To survive a motion for summary judgment, "[t]he non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." *Luvene v. Waldrup*, 903 So. 2d 745, 748 (¶10) (Miss. 2005) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1213-14 (Miss. 1996)). In a negligence action claim, the plaintiff has the burden of proof and must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Herrington v. Leaf River Forest Prods. Inc.*, 733 So. 2d 774, 777 (¶10) (Miss. 1999). The possibility of causation is not enough. *Id.*

¶12. Contradictory statements by a witness are generally evaluated by the weight and credibility of the witness's testimony, not its sufficiency. *Giles v. Brown*, 962 So. 2d 612, 617-18 (¶20) (Miss. Ct. App. 2006) (citing *Stegall v. WTWV Inc.*, 609 So. 2d 348, 352-53 (Miss. 1992)). A summary judgment motion does not place the trial court in the role of

6

weighing testimony and determining the credibility of witnesses. *Evans v. Aydha*, 189 So. 3d 1225, 1229 (¶10) (Miss. Ct. App. 2016) (citing *Jamison v. Barnes*, 8 So. 3d 238, 245 (¶17) (Miss. Ct. App. 2008)). However, a party cannot defeat a motion for summary judgment with an affidavit of a witness that contradicts facts asserted in that witness's prior deposition testimony unless the affidavit explains the discrepancy. *Id.*

¶13. Here, the statements presented in Stuckey's affidavit and deposition do not present a genuine issue of material fact to prevent summary judgment. In her deposition, she testified that when she noticed that she was getting closer to Laird, she hit the brakes, the brakes locked up, and the vehicle did not immediately stop when she hit the brakes. She also testified that she slammed the breaks. In her affidavit, Stuckey explains that she applied her brakes but could not stop the vehicle in time before rear-ending Laird. She further asserted that she did not perceive any malfunction with the brakes prior to or at the time of the accident.[1] These statements are not mutually exclusive, and thus, there is no genuine issue of material fact regarding whether the brakes malfunctioned. As a result, we find that there were no discrepancies between Stuckey's deposition and affidavit to create a genuine issue of material fact in dispute. Accordingly, we affirm the circuit court's order granting summary judgment.

¶14. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS**

---

[1] The record does not reveal whether Laird designated an expert to support his position.

**WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**McCARTY, J., DISSENTING:**

¶15. Whether the brakes of a car failed is a classic question for the jury. When taken in the light most favorable to the non-movant, the testimony of the driver indicated that the brakes didn't work. As a result, we should reverse and remand.

¶16. In one key case on when a driver might be negligent, the Mississippi Supreme Court explained that "the general rule is that it is *for the jury* to determine whether a vehicle was defective, whether its use in a defective condition was negligence, and whether such defective equipment contributed to the accident." *Burnett v. Avera*, 203 So. 2d 788, 790 (Miss. 1967) (emphasis added). Accordingly, "[i]ssues as to defendant's negligence in regard to the condition and operation of brakes or steering mechanism should generally be submitted to the jury." *Id.*[2]

¶17. This law built off prior precedent that if there is a "failure of brakes," then there is "a prima facie case of liability against a motorist[.]" *Id*. (citing *Sw. Miss. Elec. Power Ass'n v. Harragill*, 254 Miss. 460, 467, 182 So. 2d 220, 223 (1966)). "Stated differently, the operator of a motor vehicle is liable for injuries caused by defective brakes only if he was negligent in failing to discover the defect." *Sw. Miss.*, 254 Miss. at 467, 182 So. 2d at 223.

¶18. So the failure of the brakes only gets the case past summary judgment; it doesn't guarantee a jury will find for the plaintiff, and there are defenses to it. But summary

---

[2] *See also Sw. Miss. Elec. Power Ass'n v. Harragill*, 254 Miss. 460, 182 So. 2d 220, 223 (1966) ("Stated differently, the operator of a motor vehicle is liable for injuries caused by defective brakes only if he was negligent in failing to discover the defect").

judgment isn't appropriate once the prima facie case has been made.

¶19. Here, the company that owned the car only pointed to the driver's claim in one part of her testimony that she believed the brakes were working. Yet a fuller examination of her sworn testimony reveals that she had tried to use her brakes, but she thought she "locked them up." "I think that's what caused my slide," she reasoned.

¶20. But rear-ending someone because you locked your brakes up either implies you weren't keeping a lookout, which is required under State law, you were exceeding the speed limit, or the brakes were defective. This is why the general rule, articulated for nearly sixty years, sends a case about brake failure for a jury for determination.

¶21. Here's the other problem—the driver testified she didn't know anything about the car she had rented. She didn't even know the year or the model. When asked if she had rented that car before, she responded, "No. I had picked that - - I probably had that vehicle for about a week, but no, that was the first time me getting that vehicle." When asked if she understood there was paperwork showing she had it for 41 days before the collision, she said, "I'm not sure." But she thought that even though it was dry, she slid "because I slammed the brakes."

¶22. Most troubling, the driver's full testimony really shows she thought the brakes *didn't work* the day she rear-ended a 91-year-old on an interstate:

> A.     You know how when you push the brakes --
> Q.     Right.
> A.     -- and it don't stop. It wasn't an immediate stop, so that's a --
> Q.     **So when you applied the brakes the vehicle kept going?**
> A.     **Yeah, yeah. Yeah, yeah**.
> Q.     Okay. You wanted it to stop?
> A.     Yes.
> Q.     But it didn't?

A. No, not quick.

Q. Not immediate?

A. Yeah, not immediately.

Q. **And you feel that if the vehicle had stopped you would not have hit Mr. Laird?**

A. **Yes, if I could have stopped. Yes.**

(Emphasis added). Then later in the deposition, when the driver was asked whether she had attempted to stop before the collision, she testified she had applied the brakes, "[b]ut I didn't slow down fast[.]"

¶23. Taken in the light most favorable to the plaintiff, this testimony clearly indicates the driver felt she did what she was supposed to do and what she could do—slam on the brakes. If they had worked the way she intended, and the way she expected, she would not have rear-ended the other driver. But the brakes didn't work as she expected—as she pointed out, the car "didn't slow down fast"—and so under our caselaw, a prima facie case of negligence against the rental agency has been made out.

¶24. This is a classic example of a case that should be heard and decided by a jury. Perhaps they will ultimately determine the brakes were not flawed or that the sole negligent actor was the driver of the rental car—or perhaps they will not. But it is not for this Court to decide, and that is why we must reverse and remand. Accordingly, I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION.**